Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DTH CORPORATION<br><br>Apelante<br><br>v.<br><br>MUNICIPIO DE SAN JUAN<br><br>Apelado | KLAN202400036 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2021CV00805<br><br>Sobre:<br>Cobro de Dinero (Ordinario) |
|---|---|---|

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Pagán Ocasio[1] y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de julio de 2024.

Comparece la parte apelante, DTH Corporation, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 12 de diciembre de 2023, notificada al día siguiente. Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de sentencia sumaria promovida por la parte apelada, Municipio de San Juan. En su consecuencia, desestimó la demanda incoada por la parte apelante.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

### I

El 9 de febrero de 2021, DTH Corporation (DTH o apelante) incoó una *Demanda* en contra del Municipio de San Juan (Municipio o apelado) sobre cobro de dinero ordinario.[2] Alegó que, ante el estado de emergencia causado por el paso del huracán María, el Municipio

---

[1] Mediante la Orden Administrativa OAT-2024-032 del 5 de marzo de 2024, se designó al Hon. Ángel R. Pagán Ocasio, en sustitución del Hon. Nery E. Adames Soto.
[2] Apéndice 1 del recurso, págs. 1-3.

interesó contratar sus servicios profesionales para realizar funciones de manejo de desperdicios y saneamiento público para el Departamento de Operaciones y Ornato del Municipio. Planteó que había acordado con el Municipio ofrecer sus servicios a razón de dieciocho dólares ($18.00) por yarda cúbica de material vegetativo y escombros recogidos y cuatro dólares ($4.00) por yarda cúbica de material vegetativo y escombros que fuera transportado del área de recogido hasta el Centro de Acopio o la facilidad autorizada por el Municipio. Indicó que, el 20 de noviembre de 2017, el acuerdo se redujo a escrito intitulado *Contrato de Servicios para el Recogido, Transportación y Manejo de Desperdicios Sólidos.* Sostuvo que, luego de dar cumplimiento específico a sus obligaciones, el 8 de enero de 2018, suscribió la factura número 201801SJ01, la cual entregó personalmente al Municipio, por conducto de la ingeniera María A. Burgos Figueroa, subadministradora municipal del mencionado departamento, el 15 de febrero del mismo año. Arguyó que el Municipio le adeudaba $116,800.42 por la labor realizada, conforme fue contratado. Según adujo, dicha deuda estaba vencida, líquida y exigible. Argumentó que los requerimientos de pago habían sido infructuosos, por lo que se veía en la obligación de recurrir al tribunal para el recobro de su acreencia. En virtud de ello, solicitó el pago de lo adeudado, costas, gastos del litigio y honorarios de abogado.

Por su parte, el 26 de abril de 2021, el Municipio presentó su alegación responsiva, mediante la cual, en esencia, negó las alegaciones en su contra.[3] Planteó que las partes suscribieron el *Contrato de Servicios para el Recogido, Transportación y Manejo de Desperdicios Sólidos,* Contrato Núm. 2018-001727, con vigencia del 19 al 31 de diciembre de 2017, según se desprendía del Registro del

---

[3] Apéndice 2 del recurso, págs. 4-8.

Contrato de la Oficina del Contralor. Aclaró que las tarifas por servicios alegadas en la *Demanda* estaban sujetas a la revisión de costos a ser establecidos por la Agencia Federal para el Manejo de Emergencias (FEMA). Alegó, además, que había realizado los pagos sobre las facturas presentadas, a tenor con los términos y condiciones del contrato suscrito entre las partes y las disposiciones legales aplicables.

El 28 de diciembre de 2021, el Municipio instó una *Solicitud de Sentencia Sumaria*.[4] En síntesis, argumentó que existían impedimentos legales para desembolsar fondos para el pago por los servicios facturados por DTH porque estos antecedían la vigencia del contrato. Explicó que, aunque el contrato fue firmado por el presidente de DTH el 20 de noviembre de 2017, no fue hasta el 19 de diciembre del mismo año que el contrato se firmó por un representante del Municipio. Reiteró que el contrato en cuestión fue registrado ante la Oficina del Contralor el 29 de diciembre de 2017, con fecha de vigencia del 19 al 31 de diciembre del mismo año. Sostuvo que la factura de $116,800.42 presentada por DTH

---

[4] Apéndice 3 del recurso, págs. 9-21. Junto a su moción, el Municipio incluyó los siguientes documentos: (1) copia del *Primer Interrogatorio y Requerimiento de Producción de Documentos*, cursado el 30 de junio de 2021; (2) copia de la *Contestación a Interrogatorio y Producción de Documentos*, suscrito el 7 de octubre de 2021; (3) copia del mensaje vía correo electrónico de Luis E. Pinto Andino a Ferdinand Ocasio, el 28 de junio de 2021; (4) copia del *Contrato de Servicios para el Recogido, Transportación y Manejo de Desperdicios Sólidos*, suscrito el 19 de diciembre de 2017; (5) copia del *Contrato de Servicios para el Recogido, Transportación y Manejo de Desperdicios Sólidos*, suscrito el 20 de noviembre de 2017; (6) copia de la carta de Global Consultas Asociados dirigida a DTH, con fecha del 2 de enero de 2018; (7) copia de la carta del presidente de DTH, José A. Falero, dirigida a la subadministradora del Municipio de San Juan, María A. Burgos Figueroa, con fecha del 8 de enero de 2018; (8) copia de la *Factura* del presidente de DTH, José A. Falero, dirigida a la subadministradora del Municipio de San Juan, María A. Burgos Figueroa, con fecha del 8 de enero de 2018; (9) copia del *Informe de Trabajo Realizado* por DTH al Municipio, durante el periodo del 4 de noviembre al 16 de diciembre de 2017; (10) copia de la Orden Ejecutiva Núm. MSJ-30, Serie 2017-2018, emitida el 18 de septiembre de 2017; (11) copia de la *Contestación a Interrogatorio y Requerimiento de Producción de Documentos*, suscrito el 15 de diciembre de 2021; (12) copia del *Purchase Order Summary* 1805264, con fecha de creación del 24 de abril de 2018; (13) copia del *Purchase Order Header* 1805264, con fecha de orden del 24 de abril de 2018; (14) copia del registro en la página web de la Oficina del Contralor de Puerto Rico del *Contrato de Servicios para el Recogido, Transportación y Manejo de Desperdicios Sólidos* entre DTH y el Municipio, registrado el 29 de diciembre de 2017; (15) copia de la Orden Ejecutiva OE-2017-053 emitida el 28 de septiembre de 2017. Véase, Apéndice 3 del recurso, págs. 22-83.

correspondía a servicios prestados por dicha entidad entre el 4 de noviembre de 2017 al 16 de diciembre del mismo año, por lo que los servicios facturados antecedían la vigencia del contrato suscrito por las partes. Arguyó que, conforme a nuestro ordenamiento jurídico, se requería que el contrato estuviera registrado en la Oficina del Contralor para que las prestaciones y contraprestaciones fueran exigibles y se prohibía el otorgamiento de un contrato retroactivo, toda vez que realizar trabajos previos a la vigencia de un contrato violaba las normas de contratación gubernamental. Sobre ese particular, alegó que DTH no hizo gestión alguna para confirmar que, en efecto, se había realizado el registro, por lo que asumió la responsabilidad de sus pérdidas.

Por otro lado, el Municipio señaló en su petitorio sumario que DTH justificaba su intento de cobro en que, el 28 de septiembre de 2017, el entonces gobernador de Puerto Rico, Ricardo Rosselló Nevárez, aprobó el Boletín Administrativo OE-2017-053, el cual, según alegaba DTH, eximía al Municipio de los requisitos formales de la contratación gubernamental. Planteó que, de la Sección 1 de esa Orden Ejecutiva, surgía que esta se limitaba a las entidades de la Rama Ejecutiva del Gobierno de Puerto Rico. Argumentó que el estado de derecho aplicable requería que los municipios adoptaran sus propias órdenes ejecutivas como lo hizo, en este caso, la entonces alcaldesa del Municipio, Carmen Yulín Cruz Soto, el 18 de septiembre de 2017, mediante la Orden Ejecutiva Núm. MSJ-30, Serie 2017-2018. No obstante, adujo que dicha orden no eximía el cumplimiento de la ley en el otorgamiento de los contratos antes de la prestación de los servicios, pues así lo indicaba expresamente. En vista de lo anterior, solicitó la desestimación de la *Demanda*, por no existir fundamento legal alguno que sostuviera las alegaciones de DTH.

En desacuerdo, el 15 de marzo de 2022, DTH se opuso.[5] Arguyó que el contrato suscrito entre las partes se perfeccionó desde el 4 de noviembre de 2017, momento en el que concurrió el consentimiento, objeto y causa entre las partes. Alegó que, en el contrato registrado en la Oficina del Contralor, la fecha de vigencia estaba tachada y fue alterada, lo cual constituía una enmienda nula. Especificó que la fecha en la que firmó e inició todas las páginas del contrato fue el 20 de noviembre de 2017 y no la insertada mediante tachadura. Argumentó que, por lo anterior, existía una controversia real en cuanto a la autenticidad del documento presentado ante dicha oficina, así como la fecha de eficacia del contrato, lo que ameritaba que se dilucidara en un juicio en su fondo.

DTH sostuvo en su oposición que las actuaciones del Municipio fueron conforme con la Orden Ejecutiva del entonces gobernador de Puerto Rico. Sobre ese particular, planteó que la Orden Ejecutiva emitida por el Municipio no podía ir sobre la expedida por el Estado Libre Asociado de Puerto Rico, toda vez que esta última se realizó con posterioridad al paso del huracán María, mientras que la municipal fue una medida preventiva previo al inminente evento atmosférico. Adujo que no había controversia en cuanto a que los servicios se prestaron y que, sin la justa compensación, constituiría un enriquecimiento injusto. Reiteró que, por tratarse de un desastre natural donde se expidió una orden específica en cuanto a la forma y manera de la contratación, al momento en que el Municipio requirió sus servicios, estaba exento de cumplir con las formalidades impuestas en ley. Por consiguiente, solicitó que se declarara No Ha lugar la moción de sentencia sumaria.

---

[5] Apéndice 4 del recurso, págs. 84-95. DTH anejó a su escrito una copia de la *Declaración Jurada* suscrita por José Ángel Falero Gotay, en representación de DTH, el 14 de marzo de 2022. Véase, Apéndice 4 del recurso, págs. 96-97.

Posteriormente, en cumplimiento con la *Orden* del foro apelado del 2 de febrero de 2023, notificada al día siguiente,[6] el Municipio presentó una réplica el 7 de marzo de 2023,[7] mientras que DTH duplicó el 13 de abril del mismo año.[8]

Evaluadas las posturas de las partes, el 12 de diciembre de 2023, notificada al día siguiente, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa, mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria promovida por el Municipio.[9] En su consecuencia, desestimó la demanda incoada por DTH. En particular, el foro primario desglosó las siguientes determinaciones de hechos:

1. DTH es una corporación creada al amparo de las disposiciones de la Ley de *[sic]* General [de] Corporaciones, con el núm. de registro 307668, con capacidad para demandar y ser demandada.

2. José Ángel Falero Gotay es el presidente de DTH.

3. El Municipio de San Juan es un municipio establecido por virtud de las disposiciones del Código Municipal de Puerto Rico, con capacidad para demandar y ser demandado.

4. El 18 de septiembre de 2017, el Municipio de San Juan decretó un estado de emergencia ante el inminente paso del Huracán María, mediante su Orden Ejecutiva Núm. MSJ-30, Serie 2017-2018, del 18 de septiembre de 2017, para permitirle "realizar la compra y adquisición de servicios para atender la misma, sin la necesidad de realizar un proceso de propuestas o subasta pública".

5. DTH y el Municipio de San Juan suscribieron un contrato de servicios, el Contrato 2018-001727 para el recogido, transportación y manejo de desperdicios sólidos.

6. El Contrato Núm. 2018-00727 se registró en la Oficina del Contralor el 29 de diciembre de 2017, con fecha de otorgamiento del 19 de diciembre de 2017 e indica que su vigencia [es] desde el 19 de diciembre hasta el 31 de diciembre de 2017.

---

[6] Apéndice 6 del recurso, pág. 99.
[7] Apéndice 7 del recurso, págs. 100-104.
[8] Apéndice 8 del recurso, págs. 105-108. En su escrito, DTH incluyó copia de la Orden Ejecutiva, OE-2017-053, emitida el 28 de septiembre de 2017 y de la Orden Ejecutiva, OE-2017-072, emitida el 8 de diciembre de 2017. Véase, Apéndice 8 del recurso, págs. 109-117.
[9] Apéndice 9 del recurso, págs. 118-131.

7. El 8 de enero de 2018, DTH sometió una factura al Municipio de San Juan, Factura Núm. 201801SJ01, por la cantidad de $116,800.42.

8. Los servicios facturados por DTH comprenden el periodo del 4 de noviembre de 2017 al 16 de diciembre de 2017.

9. DTH no verificó que el contrato hubiese sido registrado ante la Oficina del Contralor previo al comienzo de los trabajos.[10]

El foro *a quo* determinó que no habían hechos esenciales que impidieran la adjudicación del caso por la vía sumaria. Expresó que la Orden Ejecutiva emitida por el entonces gobernador de Puerto Rico no guardaba armonía con la orden municipal, razón por la cual no se relevaron los requisitos necesarios en los casos de contratación pública. Concluyó que los servicios provistos y facturados por DTH correspondientes al periodo del 4 de noviembre al 14 de diciembre de 2017 no podían ser reclamados al Municipio, toda vez que la vigencia del contrato comenzó posterior a la fecha de tales servicios. Explicó que, en casos como el de autos, existía una obligación de cumplir con los requisitos de validez, entre ellos el que deberá constar por escrito previo a las prestaciones correspondientes. Abundó que ello respondía a la sana y recta administración pública, además de la prevención del despilfarro de fondos públicos y la corrupción.

El foro apelado indicó que del expediente no surgía que el contrato en cuestión estuviera vigente para el periodo por el cual DTH reclamó en su factura del 8 de enero de 2018. Determinó que la obligación de pago por esos servicios provistos nunca se perfeccionó, conforme a los criterios de Ley. Por consiguiente, resolvió que la presunta deuda no era legalmente exigible y que DTH no tenía derecho a remedio alguno.

---

[10] Apéndice 9 del recurso, pág. 121.

Inconforme, el 12 de enero de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente error:

> ERRÓ EL TPI EN LA APLICACIÓN DEL DERECHO A LOS HECHOS PARTICULARES DE ESTE CASO, AL PRIMAR EN SU INTERPRETACIÓN LAS DISPOSICIONES DE LA ORDEN EJECUTIVA EXPEDIDA POR LA ENTONCES ALCALDESA DEL MSJ CARMEN YULÍN CRUZ SOTO VERSUS, LA ORDEN EJECUTIVA DEL ENTONCES GOBERNADOR RICARDO ROS[S]ELLÓ NEVARES ANTE UNA EMERGENCIA NACIONAL POR UN EVENTO ATMOSFÉRICO CATASTRÓFICO.

En cumplimiento con nuestra *Resolución* del 17 de enero de 2024, la parte apelada compareció mediante *Alegato del Municipio de San Juan* el 16 de febrero de 2024.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por

la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro,* 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros,* supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de

revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario

aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

**B**

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

> El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32

LPRA Ap. VI, R. 110, pues el peso de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

**C**

Sabido es que las obligaciones nacen de la ley, los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Artículo 1042 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2992.[11] Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes y sus causahabientes, y deben cumplirse a tenor de este. Artículo 1044 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2994. Nuestro ordenamiento jurídico dispone que los contratos existen cuando concurren los requisitos de consentimiento, objeto y causa. Desde ese momento, producen obligaciones que tienen fuerza de ley entre las partes contratantes. Artículos 1044 y 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA secs. 2994 y 3391.

No obstante, debido al gran interés público y la aspiración de promover una sana y recta administración pública, la Asamblea Legislativa de Puerto Rico ha impuesto requisitos y condiciones adicionales a la contratación con los municipios. *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 536-537 (2011); *Quest Diagnostics v. Mun. San Juan,* 175 DPR 994, 1000 (2009). De esta forma, a los contratos con entidades gubernamentales se les examina su validez de acuerdo con los estatutos especiales, en lugar de acudir a las teorías generales de los contratos. *Íd.*

Para que un contrato con el gobierno tenga fuerza de ley entre las partes, son necesarios los siguientes requisitos: (1) se reduzcan a escrito; (2) se mantenga un registro fiel con mira a establecer su

---

[11] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

existencia *prima facie*; (3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y (4) que se acredite la certeza del tiempo, esto es, haber sido realizado y otorgado quince (15) días antes. *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730, 741 (2013); *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37, 53-54 (1988).

En atención al primer requisito, todo contrato entre una entidad privada y el Estado (Municipio) debe constar por escrito para que tenga efecto vinculante entre las partes. *Jaap Corp. v. Depto. Estado et al.*, supra, pág. 741. Esto, constituye un mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales. *Íd.*, pág. 742; *Colón Colón v. Mun. de Arecibo*, 170 DPR 718 (2007). De esta forma, el Tribunal Supremo de Puerto Rico ha rechazado la contratación retroactiva y determinó que era necesaria la existencia de un contrato escrito antes de prestar los servicios pactados. *Vicar Builders v. ELA et al.*, 192 DPR 256, 266 (2015). Así, pues, el requisito de un contrato escrito es indispensable para que tenga efecto vinculante entre las partes. *Íd.*, pág. 264.

Con relación al requisito de que se remita copia del contrato a la Oficina del Contralor, nuestra Asamblea Legislativa aprobó la Ley Núm. 127-2004, que enmendó la *Ley de Registros de Contratos*, Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97 *et seq.* (Ley Núm. 18-1975). Dicha enmienda tuvo el propósito de establecer que, el requisito de remitir y registrar el contrato a la Oficina del Contralor no tiene el efecto de anular el contrato, aunque impide que puedan exigirse las prestaciones hasta tanto el acuerdo se registre y se remita a dicha oficina. En específico, el Artículo 1(d) de la Ley Núm. 18-1975, 2 LPRA sec. 97(d), establece que:

> El incumplimiento con lo dispuesto en esta sección o con la disposición equivalente relacionada a registros de contratos incluidos en la sec. 4366 del Título 21, conocida como "Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico" de por sí no será

causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. No obstante, ninguna prestación o contraprestación objeto de un contrato podrá exigirse hasta tanto se haya dado cumplimiento a lo dispuesto en esta sección. Bajo ningún concepto se entenderá que esta sección permite el otorgamiento de los contratos de servicios profesionales o consultivos de las agencias y entidades gubernamentales de forma retroactiva. Toda entidad gubernamental pagará únicamente por servicios rendidos, así como las partes contratantes siempre se obligarán al cumplimiento de sus prestaciones en fecha futura. Toda contratación deberá cumplir con los requisitos establecidos en las secs. 8611 a 8615 del Título 3. Cualquier violación a lo dispuesto en este inciso provocará la nulidad del contrato otorgado.

Por otro lado, la *Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades Gubernamentales del ELA,* Ley Núm. 237-2004, según enmendada, 3 LPRA sec. 8611 *et seq.* (Ley Núm. 237-2004), dispone los criterios uniformes en los procesos para la contratación de servicios profesionales que deben seguir las entidades gubernamentales. Conforme a ello, dicho estatuto se promulgó con el propósito de consolidar en una sola ley los requisitos de contratación de servicios profesionales o consultivos que otorgan las entidades gubernamentales por concepto de servicios profesionales o consultivos a individuos y entidades privadas. Exposición de Motivos de la Ley Núm. 237-2004, *supra.*

En armonía con lo anterior, el Artículo 3 de la Ley Núm. 237-2004, 3 LPRA sec. 8613, establece los requisitos y formalidades para llevar a cabo la contratación de servicios profesionales. En particular, el referido precepto requiere que todo contrato gubernamental de servicios profesionales o consultivos tenga vigencia prospectiva; se haga por escrito; establezca la vigencia del contrato; detalle la información sobre la parte contratista y los servicios que prestará; establezca la cuantía máxima a pagarse y la forma de pago. *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448, 459 (2014).

Los preceptos legales y la jurisprudencia interpretativa en materia de contratación con el gobierno persiguen fomentar la eficacia, honestidad y corrección en protección a los intereses del pueblo. *Quest Diagnostics v. Mun. San Juan,* supra, pág. 1002. Para obligar fondos públicos, es necesario seguir los procedimientos establecidos en ley. *Íd.* Reiteradamente se ha expresado que "los entes privados tienen el deber de asegurar el cumplimiento de la ley al contratar con los municipios o se arriesgan a asumir la responsabilidad por sus pérdidas". *Íd.*

Por lo tanto, "[l]os tribunales están llamados a velar por las disposiciones legales dirigidas a proteger desembolsos públicos, ya que protegen el interés público y no el de las partes contratantes". *Quest Diagnostics v. Mun. San Juan,* supra, pág. 1002; *Hatton v. Mun. de Ponce,* 134 DPR 1001 (1994). De igual forma, debemos mirar con cautela las reclamaciones fundadas en acuerdos de contratos, en los cuales las autoridades ejecutantes no han dado cumplimiento a los mandatos en ley. *ALCO Corp. v. Mun. de Toa Alta,* supra, pág. 538. Solo mediante una evaluación rigurosa de los requisitos de contratación con el gobierno, queda satisfecho el sentir legislativo y la conciencia judicial adjudicativa sobre desembolso de fondos públicos. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

Como único señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia incidió en la aplicación del derecho a los hechos particulares de este caso. Fundamenta lo anterior en que el foro primario erró al primar en su interpretación las disposiciones de la Orden Ejecutiva expedida por la entonces alcaldesa del Municipio versus la Orden Ejecutiva del entonces

gobernador de Puerto Rico ante una emergencia nacional por un evento atmosférico catastrófico.

Sabido es que, ante una solicitud de sentencia sumaria, esta Curia se encuentra en igual posición para efectuar un análisis *de novo* de los petitorios sumarios sometidos ante la consideración del foro primario. Tras evaluar la moción sumaria presentada, la oposición a esta y el expediente ante nos, colegimos que, ambas partes cumplieron sustancialmente con las formalidades y exigencias de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. Ahora bien, luego de examinar la totalidad del expediente ante nos, colegimos que no existen controversias sobre hechos medulares que impidan la solución de la presente causa por la vía sumaria. En su consecuencia, nos corresponde determinar si el derecho se aplicó correctamente.

Hemos examinado cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable y concluimos que el Tribunal de Primera Instancia no erró en su determinación. Nos explicamos.

Según esbozáramos, todo contrato entre una entidad privada y el Municipio debe constar por escrito para que tenga efecto vinculante entre las partes. De esta forma, el Tribunal Supremo de Puerto Rico ha rechazado la contratación retroactiva y determinó que era necesaria la existencia de un contrato escrito antes de prestar los servicios pactados. Así, pues, el requisito de un contrato escrito es indispensable para que tenga efecto vinculante entre las partes. Cónsono con lo anterior, las prestaciones no pueden exigirse hasta tanto el acuerdo se registre en la Oficina del Contralor. Así las cosas, los entes privados tienen el deber de asegurar el cumplimiento de la ley al contratar con los municipios o se arriesgan a asumir la responsabilidad por sus pérdidas. En ese sentido, los tribunales están llamados a velar por las disposiciones legales

dirigidas a proteger desembolsos públicos, ya que protegen el interés público y no el de las partes contratantes.

En el caso de autos, la parte apelante alega que el Municipio le adeuda $116,800.42 por los servicios brindados luego del paso del huracán María, durante las fechas del 4 de noviembre de 2017 al 14 de diciembre del mismo año. No obstante, de una revisión del contrato en cuestión, se desprende que este se otorgó por escrito el 19 de diciembre de 2017, con vigencia desde esa fecha hasta el 31 del mismo mes y año. De igual forma, surge del expediente que el contrato en controversia se registró en la Oficina del Contralor el 29 de diciembre de 2017, con las mismas fechas de vigencia que aparecen en el contrato antes mencionado. Es decir, la vigencia del contrato suscrito entre las partes aquí comparecientes comenzó con posterioridad a la fecha de los servicios facturados.

Del expediente ante nos no surge contrato de servicio alguno que estuviera vigente durante el periodo de servicios facturado por DTH. Si bien la parte apelante plantea que, previo a dicho contrato, existieron unos acuerdos entre las partes sobre los servicios a ofrecerse, ello no constó en documento escrito alguno, según exige nuestro ordenamiento jurídico. No fue hasta el 19 de diciembre de 2017, registrado en la Oficina del Contralor diez (10) días después, que las prestaciones podían exigirse. Reiteramos que, en contrataciones gubernamentales, los contratos tienen que constar por escrito para que tenga un efecto vinculante entre las partes. En ese contexto, no hay cabida para la contratación retroactiva. Por lo tanto, la obligación de pago del Municipio por los servicios brindados por DTH durante el periodo facturado nunca se perfeccionó, por lo que la deuda en cuestión no es exigible.

La parte apelante argumenta que, ante el estado de emergencia declarado por el paso del huracán María, la Orden Ejecutiva, OE-2017-053, emitida el 28 de septiembre de 2017 por el

entonces gobernador de Puerto Rico, Ricardo Rosselló Nevares, la eximía de cumplir con los requisitos impuestos por nuestro ordenamiento jurídico en casos de contratación gubernamental. En apoyo a su contención, la parte apelante cita la Sección 1 de dicha Orden Ejecutiva, mediante la cual se dispuso lo siguiente:

> A tenor con el artículo 15 de la Ley Núm. 211-1999, se exime a los contratistas y a cualquier agencia, instrumentalidad, corporación pública y/o entidad adscrita a la Rama Ejecutiva del Gobierno de Puerto Rico de cumplir con cualquier requisito impuesto por ley, reglamento, orden administrativa o directriz aplicables que regule el proceso de contratación gubernamental.

Ahora bien, surge expresamente de la Sección 2 de la precitada Orden Ejecutiva que, "[n]o obstante lo anterior, se dispone que **los términos y condiciones de la obligación deberán constar por escrito**, con especificación de la fecha de otorgamiento, objeto de la obligación, monto total y la firma de las personas autorizadas para suscribirla". (Énfasis nuestro). Es decir, contrario a lo propuesto por el apelante, en ningún momento se le eximió del requisito de que la contratación con el Municipio constara por escrito. Por tal razón, ante una disposición tan clara, resulta innecesario discutir lo planteado por el apelante sobre la jerarquía de las órdenes ejecutivas. Recordemos que DTH tenía el deber de asegurar el cumplimiento de la ley al contratar con el Municipio. Al no hacerlo, se arriesgó a asumir la responsabilidad por sus pérdidas.

Ante el escenario anterior, coincidimos con lo determinado por el foro primario, pues resulta forzoso concluir que la parte apelante falló en establecer que existía una deuda exigible a su favor por parte del Municipio. Tampoco logró controvertir lo expuesto por este último al punto que impidiera la resolución sumaria del presente caso. En conclusión, el error señalado no se cometió.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia* desestimando la demanda en contra de la parte apelada. En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones